FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 26, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ATNAFU BEZA NEGUSSIE,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 2:16-cv-00403-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 16) and grants Defendant's Motion (ECF No. 17).

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on April 25, 2011, alleging a disability onset date of August 7, 2010. Tr. 294-95; Tr. 296-302; Tr. 47. Benefits were denied initially, Tr. 188-91, and upon reconsideration. Tr. 197-201. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on July 12, 2013. Tr. 44-84; Tr. 209-10. Medical expert Margaret Moore, Ph.D. testified. Tr. 44. On July 25 2013, the ALJ denied Plaintiff's claim. Tr. 162-82. On November 25, 2014, the Appeals Council vacated the hearing decision and remanded for further proceedings. Tr. 183-87. The Appeals Council directed the ALJ to give further consideration to the opinions

of Plaintiff's treating physician (Kingsley C. Ugorji, M.D.) and whether the Plaintiff medically requires the use of an assistance device for balance, standing, and/or ambulation, and, if necessary, obtain further medical expert and vocational testimony. Tr. 184-85. Another administrative hearing was held on May 1, 2015 before a different ALJ. Medical expert Darius Ghazi, M.D. and vocational expert Daniel McKinney testified. Tr. 85. On May 29, 2015, the ALJ denied Plaintiff's applications. Tr. 17-43.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 7, 2010. Tr. 23. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine, allergic rhinitis, obesity, depression, and anxiety. Tr. 23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform a "full range of light work," except:

> he can stand and/or walk for only four hours in a normal 8-hour workday; he would have no use of his right upper extremity (RUE) while walking because of his need for a cane; he can never climb ladders, ropes, or scaffolds; he could only perform occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; he must avoid all exposure to unprotected heights and concentrated exposure to pulmonary irritants; and he is capable of no more than semi-skilled tasks with brief superficial contact with the public.

Tr. 26.  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 36.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as production assembler, electronic worker, and garment sorter.  Tr. 36-37.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since August 7, 2010 through the date of the decision.  Tr. 37.

On September 26, 2016, the Appeals Counsel denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence.

*See* ECF No. 16 at 8.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly discrediting his symptom complaints. ECF No. 16 at 9-12; ECF No. 18 at 2-4.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[1] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only

_____

[1] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not fully credible." Tr. 28.

*1. Objective Medical Evidence*

The ALJ found that the objective medical evidence did not support the severity of Plaintiff's claimed physical and mental impairments. Tr. 28-31. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2016).[2] Minimal objective evidence is a factor

_____

[2] Some of the regulations cited in this decision were revised with effective dates in March 2017. *E.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404.1529). Since the revisions were not effective at the time of the ALJ's decision, they do not

which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

As an initial matter, Plaintiff argues "[b]ecause the ALJ's other grounds upon which the credibility determination is based is flawed, this reason cannot stand." ECF No. 16 at 9. However, as discussed below, the lack of objective evidence was not the sole basis for the ALJ's analysis of Plaintiff's claims and the Court determines the ALJ's additional reasons are clear, convincing and supported by substantial evidence. Moreover, the ALJ set out, in detail the medical evidence contradicting Plaintiff's claims of disabling mental and physical limitations; and ultimately concluded that "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this section." Tr. 31. For example, the ALJ noted that Plaintiff initially reported intermittent back pain with no radiation, however treatment records documented some tenderness, but "good range of motion," "no deformity," and movement without apparent discomfort. Tr. 28 (citing Tr. 459-50); Tr. 33 (citing Tr. 419). Similarly, the ALJ noted that imagery of the lumbar spine showed positive findings ("moderate abnormality") for spinal stenosis and degenerative disc disease, however, Plaintiff did not

_____

apply to this case. For revised regulations, the version effective at the time of the ALJ's decision is noted.

undergo surgery and his physician treated the pain through conservative measures including advice to follow a routine exercise program and follow pain medications (tramadol/ibuprofen) as prescribed. Tr. 24; Tr. 28; Tr. 29 (citing Tr. 234). The ALJ also noted the record showed no abnormal diagnostic findings of the lungs and obesity without impact on ambulation, impact on respiratory function, or edema. Tr. 28.

Regarding Plaintiff's allegations of symptoms and limitations regarding his mental impairments, the ALJ also remarked on the lack of mental health hospitalizations and failure to maintain treatment with a mental health specialist. Tr. 29; Tr. 31. Furthermore, Plaintiff has been prescribed and taken appropriate medications for the alleged impairments "depending on the level of effectiveness throughout the relevant time." Tr. 31. The ALJ noted the medical records reveal that the medications have been relatively effective, showing on various occasions Plaintiff was "happy," "feeling good," "feeling better" after starting medication, appearing "upbeat," feeling "very, very happy," "very well," and "good." Tr. 30-31. Ultimately, the ALJ accorded some deference to Plaintiff's allegations, concluding that the assessed RFC accounts for Plaintiff's restrictions in pace and difficulty working with the public because of cultural/language barriers. Tr. 34.

Plaintiff contends the ALJ isolated some supporting evidence and overlooked the fact that "[m]ental illness can be extremely difficult to predict" and

remissions are often of uncertain duration.  ECF No. 16 at 10-11.  However, the ALJ did not rely upon random evidentiary shards taken out of context.  The ALJ engaged in a comprehensive and thorough analysis of the record, chronicling both the ups and downs of Plaintiff's treatment.  Mindful that the ALJ has the discretion to evaluate and weigh the evidence, the Court concludes the lack of objective evidence was a relevant consideration in the ALJ's ultimate credibility determination.

### 2. Course of Treatment

The ALJ found that the conservative treatment recommended by Plaintiff's treating providers undermined the severity of his symptom complaints.  Tr. 29, 31.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a

transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").  Here, the ALJ noted that Plaintiff's treatment primarily consisted of routine follow up care, medication management, a prescription inhaler (for rhinitis), and advice to maintain counseling, a healthy diet plan and physical therapy exercises, which Plaintiff did not do.  Tr. 28-31.  Concluding the record evidenced a conservative course of treatment, the ALJ also remarked that Plaintiff did not undergo surgery and "[t]here is not much in the record for treatment."  Tr. 29.

Furthermore, the ALJ noted that often times, Plaintiff reported progress with this conservative course of treatment.  "Impairments that can be controlled effectively with medication are not disabling."  *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2005); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain").  The ALJ described the medical evidence where Plaintiff's reported pain was relieved with acetaminophen and narcotic prescriptions were refused, thus suggesting a lack of severity.  Tr. 28-29.  As for Plaintiff's mental impairments, the ALJ summarized treatment records showing "semi-frequent appointments" for medication management, Tr. 29, and evidence of improvement during periods of compliance with medication.  Tr. 30-31.

Plaintiff contends the ALJ considered only isolated records, rather than the record as a whole, which he claims demonstrates the severity of his symptoms waxed and waned. ECF No. 16 at 10. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ's thorough decision does not reflect a selective reliance upon the record, while ignoring other records. Plaintiff does not cite any record ignored by the ALJ or evidence of a contrasting cycle of debilitating symptoms. The Court finds the ALJ reasonably interpreted the evidence as a whole and permissibly discounted Plaintiff's subjective complaints based on his history of generally conservative treatment and effective control with medication.

*3. Activities of Daily Living*

The ALJ found that Plaintiff's alleged limited activities of daily living could not "be objectively verified with any reasonable degree of certainty" and that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." Tr. 31. Ultimately, the ALJ found that Plaintiff's reported limited daily activities were outweighed by the other factors.

*Id.*  The ALJ then noted Plaintiff's abilities to attend appointments, watch television, go grocery shopping, and read a newspaper, suggested he was not precluded from basic work activity.  Tr. 32.  The ALJ also listed other activities contradicting the contention that Plaintiff is precluded from work due to comprehension barriers or English language deficiencies.  Tr. 32 (listing his education and his ability to speak, read, and write in English, earn a "respectable wage" when he first immigrated at a number of jobs, fill out forms, and handle money).

Plaintiff does not challenge any of this reasoning, except in Reply, characterizing this reason as "no more than a restatement of the ALJ findings regarding a lack of objective evidence."  ECF No. 18 at 3.  Plaintiff's observed abilities to speak, read and write English and his experience in previous work settings and handling money, contradict Plaintiff's allegations of disabling communication barriers.  This contradiction provides a clear a convincing basis for the ALJ to have discredited the degree of limitation alleged due to communication barriers.  *Molina*, 674 F.3d at 1113 (ALJ may discredit a claimant's testimony or claims of a totally debilitating impairment when he or she reports participation in everyday activities that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment," even when those activities suggest some difficulty functioning) (citations omitted).

However as to Plaintiff's other symptom complaints, the Court notes that throughout the Ninth Circuit, courts have criticized ALJs for using identical language used by the ALJ here, explaining that "simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance." *Fisher v. Colvin*, 2015 WL 1442064 (E.D. Cal. Feb. 20, 2015) (quoting *Garcia v. Astrue*, 2013 WL 1797029 (S.D. Cal. Mar. 13, 2013)); *see also Baxla v. Colvin*, 45 F. Supp. 3d 1116, 1128 (D. Ariz. 2014) ("that a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance"); *Altamirano v. Colvin*, 2013 WL 3863956 (C.D. Cal. July 24, 2013) (noting that "objective verifiability to a reasonable degree of certainty" is not a requirement imposed by law). Moreover, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Accordingly, the lack of objective verification of Plaintiff's level of activity was not clear and convincing evidence to discount Plaintiff's other symptom complaints. *See Orn*, 495 F.3d at 639 (the ALJ erred rejecting a claimant's credibility where his "activities [did] not meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th

Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

Nevertheless, this error is harmless where, as discussed *supra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Because the ALJ's adverse determination regarding Plaintiff's symptoms was supported by specific, clear, and convincing reasons, the Court upholds it.

**B. Medical Opinion Evidence**

Plaintiff contends ALJ improperly weighed the medical opinions of treating physician Kingsley Ugorji, M.D.; examining doctors William Shanks, M.D., John Arnold, Ph.D. and Frank Rosekrans, Ph.D; and testifying medical experts, Margaret Moore, Ph.D., Darius Ghazi, M.D. ECF No. 16 at 13-20.

In determining RFC, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe.  42 U.S.C. §§ 423(d) (2)(B), (5)(B).  In weighing medical source opinions there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

To the extent that Drs. Ugorji, Shanks, Arnold, and Rosekrans assessed Plaintiff with limitations that would prevent him from working, these opinions are contradicted by the opinions of the state agency reviewing physicians, Drs. Gordon Hale, M.D., Matthew Comrie, Psy.D., and James Bailey, Ph.D., and testifying medical experts Dr. Moore and Dr. Ghazi. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Drs. Ugorji, Shanks, Arnold, and Rosekrans.

*1. Kingsley Ugorji, M.D.*

Dr. Ugorji was Plaintiff's treating physician at Community Health Association of Spokane. Tr. 418. In March 2012, Dr. Ugorji noted Plaintiff's chronic back pain "should not be disabling," and that Plaintiff's "main medical problem limiting his ability to work should be his [m]ental health[.] I will defer this to his psychological evaluation." Tr. 477. In August 2012, Dr. Ugorji checked a box indicating Plaintiff was "disabled as defined in 42 U.S.C. § 423" on the Spokane Housing Authority verification form. Tr. 515. On July 31, 2013, Dr.

Ugorji opined that Plaintiff would have "mark[ed] impairment in [the] workplace' and be "unable to perform full-time work" due to chronic pain and severe depression, and then further opined that "at most" Plaintiff could only perform "sedentary work with some difficulties especially in the area of communications, concentration, and alertness." Tr. 705. In July 2014, after the first ALJ's decision, Dr. Ugorji completed a physical functional evaluation form limiting Plaintiff to sedentary work, and indicating that Plaintiff's degenerative disc disease would cause a very significant interference with the ability to perform one or more basic work-related activities. Tr. 708-10. The ALJ identified several reasons for giving these "various opinions" "partial weight." Tr. 32.

First, the ALJ did not give weight to Dr. Ugorji's opinion that Plaintiff "has a disability" and was unable "to engage in substantial gainful activity," noting that these issues are reserved for the Commissioner. Tr. 32. The regulations provide that a statement by a medical source that a Plaintiff is "unable to work" is not a medical opinion and is not due any special significance because the legal conclusion of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527 (d) (3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . "); 20 C.F.R. § 416.927(d). The legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *see also McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir.

2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan v. Massanari,* 246 F.3d 1195, 1203-04 (9th Cir. 2011) ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion."). Though the ALJ was not bound by Dr. Ugorji's statements concerning the ultimate issue of disability, he nevertheless had the obligation to state legally sufficient reasons for rejecting it.

Next, the ALJ discounted Dr. Ugorji's opinions because they were "conflicting," finding them inconsistent internally with each other and with other parts of the record. Tr. 32. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ found it inconsistent that Dr. Ugorji had expressed an opinion that Plaintiff's

physical impairment was not disabling, then just a few months later opined

Plaintiff was disabled, and then later stated Plaintiff could engage in sedentary

work.  Tr. 32.  Plaintiff cites no specific evidence, but contends Dr. Ugorji's

opinions are not inconsistent, but rather "over time shifted with familiarity with

the patient, additional treatment and updated observations."  ECF No. 16 at 19.

Plaintiff's argument is unpersuasive and fails to address Dr. Ugorji's March 2012

opinion that Plaintiff's pain was not disabling.  ECF No. 16 at 18, 19 n.3.

The ALJ also discounted Dr. Ugorji's opinion as being inconsistent with his

"own repeated unremarkable examinations" and the record as a whole, including

the medical expert testimony indicating Plaintiff's impairments would not warrant

a limitation to sedentary work.  Tr. 32.  Plaintiff asserts the ALJ failed to

adequately explain this finding, however, Plaintiff has failed to refute the ALJ's

statement regarding the "unremarkable examinations."  *But see*, ECF No. 17 at 13

(listing generally benign treatment notes); *Bayliss*, 427 F.3d 1211, 1218 (9th

Cir.2005) (inconsistency with medical evidence constitutes germane reason).  To

the extent the ALJ did not discuss the treatment notes in more detail, the ALJ was

not required to where their substance was adequately represented by the evidence

the ALJ did discuss.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th

Cir.1984) (per curiam) (holding that evidence that is not significant or probative

need not be explicitly discussed by the ALJ).

The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The Court concludes the inconsistencies noted by the ALJ were specific and legitimate reasons for his decision to reject Dr. Ugorji's opinions that Plaintiff is unable to work and limited to sedentary work, and to credit Dr. Ugorji's statements that Plaintiff's chronic back pain would not prevent him from all work.

*2. William Shanks, M.D.*

Examining physician William Shanks performed a physical evaluation of Plaintiff in August 2012. Tr. 508-11. Dr. Shanks concluded Plaintiff was having "significant problems with his back" and "would not likely be capable of returning to work as a painter." Tr. 510-11. He recommended Plaintiff be evaluated by a spine specialist to determine if there is any treatment that would benefit him. Tr. 510. The ALJ accorded "significant weight" to the opinion Plaintiff was having "significant problems with his back," Tr. 33, but found Dr. Shanks' opinion failed to provide "any useful specifics" in assessing functioning.

Plaintiff contends the ALJ "disregard[ed]" Dr. Shank's finding that Plaintiff's work function was impaired and did not incorporate Dr. Shank's opinion

"in the discussion or ultimate decision." ECF No. 16 at 20. The Court disagrees. The ALJ accurately summarized Dr. Shank's opinion. Tr. 33. Consistent with the opinion, the ALJ determined Plaintiff could not return to his past relevant work and included limitations in the RFC about heights, ladders, and pulmonary irritants. Tr. 26. The ALJ accurately concluded Dr. Shank's assessment did not represent evidence *otherwise* probative of Plaintiff's functional capacity. Nowhere does Dr. Shanks indicate that Plaintiff is incapable of working or set forth other specific deficits. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting invitation to find that the ALJ failed to account for limitations in unspecified way, where Plaintiff had failed to detail what other physical limitations follow from the evidence). Therefore, the Court cannot conclude the ALJ ignored evidence of Plaintiff's impairments when he fashioned the RFC.

### 3. John Arnold, Ph.D.

Psychologist John Arnold prepared two psychological/psychiatric evaluation in 2011. Tr. 393-400; Tr. 401-407. He diagnosed major depressive disorder, recurrent and mild, and rule out cognitive disorder. Tr. 394; 402. He opined Plaintiff would be able to understand and carry out simple instructions, concentrate for short periods of time, complete simple tasks without disrupting others, adapt to minor changes in a work setting, and recognize hazards. Tr. 396. However, he

opined Plaintiff would have a marked limitation in his ability to communicate and perform effectively in a work setting with public contact. Tr. 395, 403. The ALJ accorded partial weight to Dr. Arnold's opinions, discounting the "marked" limitation, noting the "checkbox" notation is "not consistent with this source's own narrative, GAF score, or the treatment record." Tr. 34.

Plaintiff faults the ALJ for failing to elaborate on this finding, and on that basis, contends the ALJ's decision does not articulate a specific or legitimate reason for discounting Dr. Arnold's opinion. ECF No. 16 at 15. Yet Plaintiff does not identify any limitations identified by Dr. Arnold that were omitted from the ALJ's assessment of Plaintiff's RFC. ECF No. 16 at 13-15. An ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated them into the RFC, *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010), and when evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). The Court need not determine whether the ALJ's three stated reasons were insufficient because any error in the partial rejection of Dr. Arnold's opinion was harmless; the limitation to brief, superficial contact with the public is contained within the ALJ's RFC determination.

*4. Frank Rosekrans, Ph.D.*

Dr. Rosekrans examined Plaintiff twice, in 2012 and in 2014. Tr. 516-519; 719-726. He opined that Plaintiff would have the following "severe" limitations, i.e., "the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop": (1) the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision; (2) communicate effectively in a work setting; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 518; 722. He opined there were other areas where Plaintiff would have marked or moderate limitations. Tr. 518; Tr. 722. The ALJ gave the opinions "little weight." Tr. 34.

First, the ALJ concluded Dr. Rosekrans' opinion was "grossly out of step with the treatment records, which uniformly show mild-moderate psychological impairment." Tr. 34. The ALJ explained that the record was "replete with instances where the claimant was doing better when on medication and was not doing so well when off the medication." *Id*. The ALJ also concluded that "the majority of the record does not support his findings," Tr. 35, noting that Plaintiff stated himself that he does "not have problems getting along with others or dealing with supervisors." Tr. 35. Plaintiff contends this explanation was too perfunctory because he did not "identify the treatment records that ostensibly show[] a mild/moderate impairment nor does he identify the portion of the record that shows

a difference in [Plaintiff's] mental state." ECF No. 16 at 16.

An ALJ may reject limitations "unsupported by the record as a whole." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("consider[ing] the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five" because "it is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d

Cir. 2004) (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing").

The ALJ's reliance upon inconsistency with the record was not too broad, vague, or perfunctory. The ALJ's decision, read as a whole, built an accurate and logical bridge from the evidence, outlined in detail earlier in the ALJ's decision, to his conclusions that achieves the required level of specificity. For example, the ALJ noted that Plaintiff's physicians had maintained a conservative course of treatment, his mental impairments never resulted in prolonged hospitalization, and though he had started counseling (Tr. 30-31), he failed to maintain a relationship with a mental health specialist. Tr. 31. The ALJ noted treatment records documenting improvement in mental health with sleep, Tr. 30, medication management, Tr. 30-31, and improved life circumstances, Tr. 31. The ALJ provided a specific and legitimate reason or giving little weight to Dr. Rosekrans' opinions.

In addressing other contentions elsewhere in the decision, the ALJ provides additional reasons for discounting Dr. Rosekrans' opinion. Tr. 31, 35. Though Dr. Rosekrans found Plaintiff difficult to understand, the ALJ rejected the suggestion that Plaintiff could not understand or communicate in English. Tr. 32. The ALJ pointed out factually inconsistent psychosocial history reported in Dr. Rosekrans'

2012 assessment such as that Plaintiff was never married and spoke little English. Tr. 31. The ALJ also noted that Dr. Rosekrans "did not use widely accepted psychological testing besides the Trails A and B" tests. Tr. 35. These additional considerations of Dr. Rosekrans' assessment support this Court's conclusion the ALJ's review of this record was thorough and adequate.

### 5. Margaret Moore, Ph.D. and Darius Ghazi, M.D.

Plaintiff also challenges the ALJ's reliance on the opinions of medical experts Dr. Moore and Dr. Ghazi.

#### a. Bias

Plaintiff contends Dr. Moore's testimony evinces "bias" against claimants and disdain toward Plaintiff, which taints the ALJ's reliance upon her opinion. ECF No. 16 at 17. To demonstrate Dr. Moore's bias, Plaintiff points to Dr. Moore's statements that the record evinced "a pattern of difficulties with acculturation," Tr. 51, "dependent lifestyle, complete with the whole issue of seeking support, social support," Tr. 51, "difficulty motivating himself," Tr. 52, and focus upon maintaining benefits. ECF No. 16 at 17. Plaintiff also points to Dr. Moore's statements regarding Plaintiff's treatment provider ("I think that the whole involvement with CHAS is in many ways a mystery to me why so much time has been invested in context with the claimant," Tr. 51) and inquiry regarding Plaintiff's immigration and work history.

1    Plaintiff's allegation of "clear" and "compelling" bias in order to eliminate

2    any persuasive weight attributed to Dr. Moore reveals an argument that constitutes

3    disagreement with the doctor's interpersonal manner and her conclusions.  It does

4    not reflect on the integrity of the process or suggest Plaintiff' right to fair hearing

5    was compromised.  Medical experts testify as impartial witnesses at the hearing.

6    The ALJ must "qualify" them by eliciting information, including but not limited to,

7    impartiality, expertise, and professional qualifications.  Dr. Moore's professional

8    qualifications are part of the record.  Tr. 236-38.  She has worked as an expert for

9    the Social Security Administration since 1998.  *Id.*  Plaintiff's counsel stipulated to

10   these qualifications.  Tr. 49.  Plaintiff's counsel had the opportunity confront and

11   examine Dr. Moore regarding adverse testimony.  When given the opportunity,

12   counsel indicated "[n]o questions."  Tr. 53.  Plaintiff also had the right to object

13   based upon bias, but did not do so either at the hearing or before the Appeals

14   Council.  *See* Tr. 251 (counsel's letter to the Appeals Council accusing Dr. Moore

15   of lack of diligence or incompetence).  The Court will not presume any inherent

16   unfairness in the ALJ's reliance on Dr. Moore's opinions solely based upon Dr.

17   Moore's statements regarding issues relevant in evaluating the record pertaining to

18

19

20

ORDER - 32

acculturation[3], work history, the presence of benefit-seeking behavior, and degree of impairment. *Cf. Ventura v. Shalala, 55* F.3d 900 (3rd Cir. 1995) (holding Plaintiff was entitled to new hearing because of the ALJ's offensive conduct prevented the claimant from receiving a full and fair hearing).

### b. Substantial Evidence

Relying upon *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), Plaintiff also contends the ALJ improperly "accepted" Dr. Moore and Dr. Ghazi's opinions over treating and examining medical sources "without valid explanation." ECF No. 16 at 18, 20. When an ALJ rejects contradicted opinions of physicians, the ALJ must not only identify specific and legitimate reasons for rejecting those opinions, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. *Tonapetyan* held that a "contrary opinion of a non-examining medical expert may constitute substantial evidence when it is

--------

[3] Plaintiff suggests "none of these remarks were related to the opinion she was hired to render," however, "Acculturation Difficulty" was specifically diagnosed by Dr. Rosekrans. Tr. 721. Though Plaintiff finds Dr. Moore's use of the phrase "pattern of difficulties" off-putting, ECF No. 18 at 5, Dr. Moore later restated her opinion that the record evinced "some chronic issues with acculturation." Tr. 52. This is consistent with the opinions of Dr. Rosekrans. Tr. 720-21.

consistent with other independent evidence in the record."  242 F.3d at 1149;

*Lester*, 81 F.3d at 830-31.

Here, as noted *supra*, the ALJ articulated specific and legitimate reasons for discrediting the opinions of certain treating and examining physicians.  Moreover, as the ALJ observed, the ALJ did not adopt Drs. Moore and Ghazi's opinions in their entirety.  The ALJ concluded based upon his review of the record as a whole, that Plaintiff was more restricted than was suggested by either expert.  Tr. 32 (explaining limitation to unskilled or semi-skilled tasks with brief superficial interaction with the general public).  The ALJ credited the experts' opinions to the extent they suggested Plaintiff was not disabled.  Tr. 35.  These opinions constitute substantial evidence because the independent evidence, thoroughly reviewed by the ALJ, supports the decision.  Though noting a relatively "sparse" record, the ALJ devoted five pages of the decision to his review of the objective evidence, Tr. 28; Plaintiff's treatment records, Tr. 28-32 (including "repeated unremarkable examinations," Tr. 32, and conservative courses of treatment), Plaintiff's activities of daily living, Tr. 31-32, and Plaintiff's testimony, Tr. 33.

It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The Court must consider the ALJ's decision in the

context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir.2008) (internal quotation marks omitted). Although Plaintiff points to various pieces of evidence in the record that could support a more restrictive RFC finding if interpreted differently than by the ALJ, read in the context of the record as a whole, the ALJ reasonably found that Plaintiff's limitations did not prevent him from being able to work. Reversal is therefore not warranted on this basis.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error. **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and CLOSE THE FILE.

DATED February 26, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE